IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Megan Lautenslager, individually and on behalf of all other similarly-situated individuals,<br><br>                              Plaintiff,<br><br>vs.<br><br>Red Bull Distribution Company, Inc.,<br><br>                              Defendant. | C/A No.:  2:24-cv-04955-DCN-MHC<br><br>**COMPLAINT**<br>(Violation of FLSA, FMLA)<br>(Jury Trial Demanded) |

Plaintiff Megan Lautenslager ("Plaintiff"), individually and on behalf of other similarly-situated individuals, complaining of Defendant Red Bull Distribution Company, Inc. ("RBDC"), would respectfully show unto this Honorable Court as follows:

## NATURE OF THE ACTION

1. Plaintiff was an Account Services Manager ("ASM") for Defendant RBDC and consistently worked over 50-60 hours a week but was not paid a premium for her time over 40 hours a week. Defendant RBDC willfully and intentionally mischaracterized Plaintiff and dozens of other similarly-situated persons as exempt from overtime. After working this punishing schedule with no overtime compensation for a year, Plaintiff announced her intention to take a brief medical leave pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, ("FMLA") and was terminated immediately afterward. This is an action brought individually and as a collective action for unpaid overtime compensation, liquidated damages, attorney's fees, and for other relief under the Fair Labor Standards Act ("FLSA"), as well as for damages and other relief under the FMLA. The collective action provisions under the FLSA provide for opt-in class

1

participation.

2. This action arises out of Plaintiff's employment with RBDC.

## **PARTIES, JURISIDICTION, & VENUE**

3. Plaintiff Megan Lautenslager is a resident of Florence County, South Carolina.

4. Defendant Red Bull Distribution Company, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California.

5. RBDC is the distribution company that exclusively distributes Red Bull North America, Inc. ("Red Bull") products such as Red Bull Energy Drink and Red Bull Sugarfree to retailers.

6. Upon information and belief, RBDC has four distribution centers in South Carolina and management of the South Carolina employees is handled at the Summerville, South Carolina RBDC location.

7. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction to hear this matter based upon 28 U.S.C. § 1367.

9. RBDC does business in the State of South Carolina and is subject to its personal jurisdiction.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **FACTUAL ALLEGATIONS**

11. RBDC hired Plaintiff on or about June 19, 2023, as an Account Service

Manager ("ASM").

12. As an Account Service Manager, Plaintiff was paid on a salaried basis and was told that she was exempt from the overtime requirements of the Fair Labor Standards Act.

13. When Plaintiff was hired, RBDC told Plaintiff that she would be expected to work forty (40) hours a week to earn her salary.

14. However, in reality, Plaintiff and other ASMs were expected to work at least ten hours a day, five days a week and frequently worked twelve hours a day, five days a week at RBDC's insistence.

15. Plaintiff's job duties as an ASM included driving product to serviced stores, restocking the shelves of serviced stores with products, replenishing depleted products, removing damaged and expired items from the shelves, issuing credits to the serviced stores for removed items, and submitting orders from the stores for additional products.

16. RBDC describes the job of an ASM on its website:

Reporting to the District Sales Manager, the Account Sales Manager's (ASM) primary function is to perform outside sales of product inventory while driving an assigned route of accounts. You will increase product sales and placement of product displays at all large and small format "off premise" stores. You will upsell inventory, cooler space, and product displays. The primary role of the ASM is to service all customers in a safe and productive manner, according to our Red Bull executional standards.

17. RBDC's website further states:

(ASMs) are at the heart of our success. They go above and beyond to increase product sales and improve placement. They establish and maintain relationships, and drive business results through effective selling and exceptional customer service. If you're interested after getting a taste of the ASM lifestyle, pop open an ice-cold Red Bull and apply!

18. During her time with RBDC, Plaintiff serviced two general types of stores: large-format stores such as Target or Walmart, and small-format stores such as

3

convenience stores attached to gas stations.

19. When Plaintiff serviced large-format stores, her role was limited to restocking shelves and suggesting order volume to those stores, and the bulk of the product she delivered to those stores was ordered ancillary to sales made pursuant to long-standing high-level sales contracts between the large-format stores and RBDC corporate salespeople.

20. When Plaintiff serviced small-format stores, she did occasionally make some direct sales, but generally speaking, RBDC's relationship with those stores had been established prior to Plaintiff's employment and Plaintiff's duties were limited to restocking shelves and arranging displays.

21. Plaintiff was paid a salary and a Sales Incentive Commission ("SIC") for her work for RBDC. The SIC was calculated by Key Performance Indicators ("KPIs") measured both by sales volume and also by "additional individual performance targets" which were to be measured by "achievement of specific, individual performance targets that are intended to enhance [the ASM's] overall in-store execution" including measures like placement of coolers and tidiness of Red Bull display.

22. The majority of Plaintiff's time working at RBDC was spent driving cases of product to retailers, loading, unloading, carrying product, arranging store displays, and maintaining previously established sales relationships.

23. During her time with RBDC, Plaintiff was never asked to expand the sales territory of RBDC or to establish sales relationships with any retailer that did not already have a contract with RBDC.

24. Upon information and belief, RBDC has corporate salespeople who

establish the sales contracts with the stores serviced by ASMs.

25. During her time with RBDC, Plaintiff never made any deliveries across state lines.

26. Plaintiff suffers from Failed Back Syndrome and Lumbar Facet Arthropathy; she also has a strained IT band on her right leg.

27. Plaintiff informed RBDC that she was suffering from increased pain due to her disabilities and was absent from work a handful of times due to her pain with the approval of RBDC management.

28. Plaintiff was transparent about her health conditions to RBDC management and informed them that she needed to eventually have surgery on her back.

29. RBDC management asked Plaintiff to continue working and put off her surgery to cover for another employee who was on leave, and Plaintiff agreed to wait to schedule her surgery until that employee was back in the office.

30. On June 19, 2024, after Plaintiff had been at RBDC for a year, Plaintiff submitted a request for a job-protected leave of absence under the Family Medical Leave Act (FMLA) which was due to start on June 26, 2024, through Matrix, the online tool used by RBDC for requesting and managing leaves of absence.

31. On June 20, 2024, Plaintiff worked a fourteen-hour shift.

32. When Plaintiff returned to the warehouse after her shift on June 20, 2024, RBDC terminated Plaintiff's employment, stating that her termination of employment was due to her disability-related absences.

33. To add insult to injury, the week _after_ Plaintiff was terminated, she received a notice from Matrix that her FMLA leave request was approved.

34. As a result of Plaintiff's retaliatory termination, Plaintiff lost her health insurance and benefits and therefore had to cancel her scheduled surgery.

35. Plaintiff has also lost wages, suffered emotional stress, and incurred attorney's fees to pursue this action.

36. Further, as a result of RBDC's intentional failure to pay overtime compensation, Plaintiff has lost significant earned wages.

37. Upon information and belief, the circumstances described above regarding RBDC's failure to pay overtime compensation to ASMs are also applicable to Plaintiff class.

## FOR A FIRST CAUSE OF ACTION
Fair Labor Standards Act – Unpaid Overtime
(Individual and Collective Action, 29 U.S.C. § 201, *et seq.*)

38. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if restated herein verbatim.

39. RBDC employed Plaintiff and members of Plaintiff class as salaried workers during the time periods relevant to this Complaint.

40. RBDC is a covered employer within the meaning of the FLSA, as it is an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

41. Throughout Plaintiff's employment, RBDC required Plaintiff to work in excess of 40 hours per workweek without compensating Plaintiff for such hours worked in excess of 40 at a rate of not less than one and one-half times Plaintiff's regular rate of pay in violation of Section 7(a) of the Fair Labor Standards Act.

42. RBDC also required members of Plaintiff class to work in excess of 40 hours

per workweek without compensating them for such hours worked in excess of 40 at a rate of not less than one and one-half times Plaintiff's regular rate of pay in violation of Section 7(a) of the Fair Labor Standards Act.

43. RBDC knew it had a duty to pay Plaintiff and members of Plaintiff class overtime wages required by the Fair Labor Standards Act.

44. RBDC's failure and/or refusal to pay Plaintiff and members of Plaintiff class the overtime wages required when it knew Plaintiff and members of Plaintiff class were working overtime hours was a willful violation of the Fair Labor Standards Act within the meaning of 29 U.S.C. § 255(a).

45. As a direct result of RBDC's actions, which Plaintiff contends were willful in nature, Plaintiff and members of Plaintiff class are entitled to an award against RBDC for actual, compensatory and punitive damages, including both back pay and liquidated damages, along with attorneys' fees and costs related to this action and any pre-judgment interest.

46. Plaintiff and members of Plaintiff class are entitled to damages in the amount of their unpaid overtime compensation, liquidated damages from three years immediately preceding the filing of this action, plus interest and costs as allowed by law, pursuant to 29 U.S.C. §§ 216(b) and 255(a), and such other legal and equitable relief as the Court deems just and proper.

47. The work and pay records of Plaintiff and members of Plaintiff class are in the possession, custody, and/or control of Defendant RBDC and Defendant RBDC is under a duty pursuant to Section 11(c) of the FLSA, 29 U.S.C. § 211(c), and pursuant to regulations of the United States Department of Labor to maintain and preserve such

payroll and other employment records from which the amount of Defendant RBDC's liability can be ascertained. Plaintiff requests an order from this Court requiring Defendant RBDC to preserve such records during the pendency of this action.

48. Plaintiff and members of Plaintiff class are also entitled to an award of reasonable attorney's fees and costs incurred in prosecuting this action, as provided by the FLSA, 29 U.S.C. § 216(b).

## FOR A SECOND CAUSE OF ACTION
(Violation of Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*)
(Individual)

49. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if restated herein verbatim.

50. Pursuant to the Family Medical Leave Act, Defendant was a covered employer within the definition of Section 2611(4) of the FMLA, as it was "engaged in commerce or in any industry or activity affecting commerce" and employed "50 or more employees for each working day during each of 20 or more calendar workweeks in the current preceding calendar year." 29 U.S.C. § 2611(4).

51. At all times relevant, Plaintiff was an "eligible employee" within the definition of Section 2611(2) of the FMLA because she was employed by Defendant for more than one year and worked at least 1250 hours during the previous 12-month period. 29 U.S.C. § 2611(2).

52. The FMLA prohibits employers from discharging or in any other manner retaliating against an individual for opposing any practice made unlawful, or which the individual reasonably believes to be unlawful, under the FMLA, 29 U.S.C. § 2515(a)(2); 29 C.F.R. 825.220(a)(2); 29 C.F.R. 825.220(e).

53. Plaintiff provided Defendant RBDC advance notice that she was going to request FMLA coverage for an upcoming surgery due to her own serious health condition.

54. Defendant RBDC approved Plaintiff's leave as leave taken pursuant to the FMLA.

55. However, Defendant RBDC retaliated against Plaintiff for requesting FMLA leave by terminating her employment with the pretextual reason that Plaintiff had previously incurred absences relating to her health condition.

56. Plaintiff is informed and believes that Defendant RBDC's actions were willful, and she, therefore, is entitled to an amount of liquidated damages equal to his actual damages, as well as to attorney's fees and court costs.

57. Plaintiff suffered damages as a result of Defendant RBDC's illegal acts, including, but not limited to, loss of income and benefits, mental anguish, and emotional stress.

**PRAYER FOR RELIEF**

Therefore, Plaintiff respectfully request that this Court grant the following relief:

a. An order authorizing the sending of appropriate notice to current and former employees of Defendant RBDC's South Carolina employees who are potential members of the collective action under the FLSA;

b. A declaratory judgment that Defendant RBDC has willfully and in bad faith violated the overtime compensation provisions of the FLSA and has deprived Plaintiff and the members of Plaintiff class of their rights to such compensation;

c. An order requiring Defendant RBDC to provide a complete and accurate accounting of all the overtime compensation and other compensation to which Plaintiff

and the members of the Plaintiff class are entitled;

    d.    An award of monetary damages to Plaintiff and the members of Plaintiff class in the form of back pay for overtime compensation and other compensation due, together with liquidated damages in an equal amount;

    e.    Injunctive relief ordering Defendant RBDC to amend its wage and hour policies to comply with applicable laws;

    f.    Pre- and post-judgment interest;

    g.    Any and all lost health care and dental benefits, including but not limited to out-of-pocket expenses incurred for health and dental care;

    h.    Actual and liquidated damages;

    i.    Punitive damages to deter Defendant from continuing its illegal action;

    j.    An award of costs and expenses of this action together with attorney's fees; and,

    k.    Such other and further relief and this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

[*Signature page to follow.*]

Respectfully submitted,

s/ Sarah J.M. Cox
Jack E. Cohoon (Fed. Bar No.: 9995)
Sarah J.M. Cox (Fed Bar No.: 13166)
Annie Day Bame (Fed. Bar No.: 13363)
BURNETTE SHUTT & MCDANIEL, PA
Post Office Box 1929
Columbia, South Carolina 29202
Tel.  (803) 904-7914
Fax  (803) 904-7910
JCohoon@BurnetteShutt.Law
SCox@BurnetteShutt.Law
ABame@BurnetteShutt.Law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

September 12, 2024